UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARLA M. SPENCER,

       Plaintiff,

v.                            CASE No. 8:05-CV-1701-T-TGW

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

_____

O R D E R

       The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[1]   Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

       The plaintiff, who was forty-eight years old at the time of the administrative hearing and who has a ninth grade education (Tr. 376), has

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 11).

worked, relevantly, as an inspector (Tr. 377).   She filed a claim for supplemental security income payments, alleging that she became disabled due to asthma, arthritis, pinched nerve, and left knee surgery (Tr. 69).  The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge.  The law judge found that the plaintiff has  severe impairments of bronchial asthma, chronic pain syndrome, and degenerative arthritis (Tr. 25).  He concluded that these impairments limited the plaintiff to simple repetitive tasks at a restricted light exertional activity level with a sit/stand option and with no repetitive bending and stooping (id.).  In addition, he found the plaintiff must avoid climbing ladders, ropes, or other heights, overhead reaching, and rapid neck movement (id.).  Based upon the testimony of a vocational expert, the law judge determined that these restrictions did not prevent the plaintiff from returning to past work as an inspector (id.).  The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A.  In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

. . . has lasted or can be expected to last for a continuous period of not less

than twelve months."  42 U.S.C. 1382c(a)(3)(A).  A "physical or mental

impairment," under the terms of the Act, is one "that results from

anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic

techniques."  42 U.S.C. 1382c(a)(3)(D).  The Act provides further that a

claimant is not disabled if she is capable of performing her previous work.

42 U.S.C. 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not

disabled must be upheld if it is supported by substantial evidence.  42 U.S.C.

405(g).  Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402

U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S.

197, 229 (1938).

It is, moreover, the function of the Commissioner, and not the

courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims.  See 20 C.F.R. 416.920. One of the threshold inquiries (step two) is whether a claimant has a severe impairment.  20 C.F.R. 416.920(c).  An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities.  20 C.F.R. 416.921(a).  If an impairment is not severe, then a claimant is deemed to be not disabled.  20 C.F.R. 416.920(c).

When an impairment is severe, a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work.  20 C.F.R. 416.920(e).  If a claimant cannot do such work, an

additional determination (step five) is made concerning whether the claimant can perform other work which exists in substantial numbers in the national economy.   20 C.F.R. 416.920(f).

III.

The law judge found that the plaintiff had physical impairments of bronchial asthma, chronic pain syndrome, and degenerative arthritis, which are considered severe.   He concluded that these impairments restricted the plaintiff to a range of light work, but did not render her disabled.   The plaintiff does not challenge these findings.   Rather, the plaintiff argues that the law judge erred in his treatment of a mental impairment.

The most persuasive argument asserted by the plaintiff is that the law judge erred in failing to find that the plaintiff's depression is not a severe impairment within the meaning of the Social Security regulations. The term "severe impairment," as used in the regulations, is something of a misnomer.   The regulations could more aptly use the term "significant impairment."   Thus, the regulations define a nonsevere impairment as one that "does not significantly limit [the claimant's] physical or mental abilities to do basic work activities."   20 C.F.R. 416.921(a).   Accordingly, the court

of appeals has stated that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." <u>Brady</u> v. <u>Heckler</u>, 724 F.2d 914, 920 (11th Cir. 1984).

The evidence in this case establishes that, as a result of depression, the plaintiff has moderate limitations in concentration.  The plaintiff in July 2002 underwent a consultative examination by Dr. Billie Jo Hatton, a psychologist (Tr. 169).  Although Dr. Hatton did not make any express finding regarding the plaintiff's concentration, two non-examining reviewing mental health experts, one a psychologist (Dr. Karen Johnson) and one a psychiatrist (Dr. David Grippe), construed Dr. Hatton's report to indicate that the plaintiff had moderate limitations in concentration (Tr. 190, 351).  Consequently, both Dr. Johnson and Dr. Grippe concluded, contrary to the law judge, that the plaintiff had more than a nonsevere impairment (Tr. 178, 337).

In addition, following the hearing, the law judge had the plaintiff undergo a second psychological consultative evaluation, this one by Dr. Steven N. Kanakis, Psy.D.  Dr. Kanakis, like Dr. Hatton, concluded

that the plaintiff suffered from a major depressive disorder, recurrent, moderate (Tr. 369, <u>compare</u> Tr. 172).  The law judge discounted Dr. Kanakis's statements on the ground that "the weight of the evidence supports a contrary conclusion" (Tr. 23).[2]

To some extent, the law judge, who is assigned the responsibility for weighing the evidence, could discount Dr. Kanakis's opinions in light of other evidence in the record.  Thus, Dr. Kanakis assigned the plaintiff a GAF score of 55 (Tr. 369), which reflects moderate symptoms, while Dr. Hatton assigned a GAF score of 65 (Tr. 172), which indicates mild symptoms.  <u>See</u> <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th ed.), p. 32.  Since both Dr. Hatton and Dr. Kanakis are one-time examiners, there is nothing about the reports (including the fact that Dr. Kanakis administered the MMPI-2) that would compel the law judge to accept Dr. Kanakis's opinion over Dr. Hatton's.  That is particularly true

---

[2]The law judge also commented that Dr. Kanakis had not "embellish[ed]" the highest score on the Minnesota Multiphasic Personality Inventory II ("MMPI-2") regarding hypochondriasis, but had noted instead the slightly lower score regarding depression (Tr. 22-23).  This prompted the plaintiff to develop a lengthy argument concerning those scores (Doc. 10-1, pp. 3-6).  That argument seems to me to be mostly beside the point since the law judge discounted Dr. Kanakis's statements not due to a misplaced emphasis on the MMPI-2 scores, but on the basis that "the weight of the evidence supports a contrary conclusion" (Tr. 23).

since other doctors have made findings that would seem to bolster Dr. Hatton's view.

Thus, Dr. S. Rao Korabathina, a family practitioner, in answer to a specific question from the Social Security Administration, reported that the plaintiff's "mental status is normal" and that "[s]he is not depressed or anxious at the time of evaluation" (Tr. 175). Also, Dr. Douglas E. Terzigni, a neurologist, noted with respect to the plaintiff's mental status that the plaintiff had "[g]ood concentration" (Tr. 306). Accordingly, to the extent that the opinions of Dr. Hatton and Dr. Kanakis differ, the law judge in weighing the evidence could reasonably accept Dr. Hatton's opinions over those of Dr. Kanakis.

However, there does not appear to be any meaningful difference in the opinions of the two examining psychologists with respect to the plaintiff's concentration. Thus, Dr. Hatton's report, as interpreted by Dr. Johnson and Dr. Grippe, indicated that the plaintiff had moderate limitations with respect to concentration (Tr. 190, 192-93, 351-52). Both Dr. Johnson and Dr. Grippe opined that, despite concentration problems, the plaintiff was capable of performing simple, repetitive, routine tasks (Tr. 194, 353). Similarly, Dr. Kanakis indicated that the plaintiff had moderate

limitations in the ability to understand and carry out short simple instructions, as well as understand and carry out detailed instructions (Tr. 371). The definition of "moderate" provided to Dr. Kanakis on the form was: "There is moderate limitation in this area but the individual is still able to function satisfactorily" (id.). Therefore, there does not seem to be any disagreement among the four mental health specialists that the plaintiff has moderate limitations in concentration but that, nevertheless, the plaintiff could satisfactorily perform at least simple, routine, repetitive tasks.

The observations during physical examinations by Drs. Korabathina and Terzigni, who are not mental health specialists, do not suffice in the face of contrary opinions from mental health experts to support a finding that the plaintiff does not have a moderate limitation in concentration. On the other hand, the views of those two doctors do bolster the conclusion that the plaintiff can perform simple, routine, repetitive tasks.

The conclusion that the plaintiff had a moderate limitation in concentration means that the law judge erred in determining that the plaintiff did not have a severe mental impairment. A moderate limitation in concentration would have more than a minimal effect on an individual's ability to work. Brady v. Heckler, supra. This result is confirmed by the

assessments of the two mental health reviewers, each of whom pointedly did not mark on the appropriate form that the plaintiff's depression was a nonsevere impairment, but checked instead that a residual functional capacity evaluation was necessary (Tr. 178, 337).

However, the law judge's failure to find that the plaintiff's depression was a severe impairment does not amount to reversible error. Importantly, because the law judge found that the plaintiff has severe impairments, he did not stop prematurely at step two of the sequential analysis, but proceeded on to step four pertaining to past work. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987).

Moreover, the law judge included in his hypothetical question to the vocational expert, as well as in his findings, the restriction to simple, routine, repetitive tasks (Tr. 25, 399).[3]  As indicated, the mental health experts agreed that the plaintiff could perform simple, routine, repetitive tasks. Furthermore, they did not identify any other functional limitations resulting from the plaintiff's depression.  Consequently, it makes no difference to the outcome of this case whether the law judge properly characterized the

_____

[3]Notably, the law judge included the limitation to simple, routine, repetitive tasks "due to a combination of factors," not necessarily including depression (Tr. 399). Regardless of the reason for including that limitation, it covers the functional limitation arising from the plaintiff's depression.

plaintiff's depression as a severe impairment.  His failure to do so is therefore harmless error.

The plaintiff's final argument is that the law judge failed to evaluate the combination of the plaintiff's impairments.  The law judge's consideration of the combined effect of the impairments is clearly shown by the law judge's hypothetical question, which includes both exertional and non-exertional restrictions (see Tr. 398-99), as well as by statements in his decision (Tr. 17, 18).  The plaintiff fails to specify any functional limitation that should have been included in the hypothetical question, but was not (see Doc. 10-1, p. 11).

Rather, the plaintiff asserts that "[t]he ALJ's Decision does not consider the combination of the physical impairments causing the level of pain and other symptoms with the mental impairment intensifying the level of pain, which is the combination of impairments from which Ms. Spencer suffers" (id.).  This contention, which seems to assert that the plaintiff's depression intensifies her pain, is deemed abandoned because it is not supported by any citation to the record, as is required by the scheduling order (Doc. 8, p. 2).  In all events, I found evidence in my review of the

record indicating that the plaintiff's pain adds to her depression, but I saw no evidence suggesting that the plaintiff's depression intensifies her pain.

For these reasons, the plaintiff's argument that the law judge failed to consider the combined effect of her impairments is meritless.

## IV.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and close the case.

DONE and ORDERED at Tampa, Florida, this <u>22nd</u> day of September, 2006.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE